OPINION OF THE COURT
Mary H. Smith, J.
Petitioner, a not-for-profit corporation, commenced this summary proceeding pursuant to RPAPL 713 (7) and 713 (10) to remove respondent, an otherwise homeless person, who is HIV positive, from the premises known as Apt. 1, 187 Ashburton Ave., City of Yonkers, New York, on the grounds that respondent’s license to remain had been revoked and he was no longer in lawful possession of the premises.
Respondent now moves for summary judgment pursuant to CPLR 3212, a summary determination pursuant to CPLR 404 (b), or in the alternative for a stay of this summary proceeding pending the disposition of a class action suit against petitioner and Westchester County Department of Social Services (WCDSS), presently pending before the Supreme Court, seeking a stay and consolidation of the instant proceedings with the Supreme Court case. Petitioner opposes respondent’s motion for summary judgment and alternative motion for a stay of the instant proceedings and cross-moves for summary judgment.
On a motion for summary judgment pursuant to CPLR 3212 the question before the court is whether there are facts sufficient to require a trial of any issue of fact or in the alternative, whether the cause of action or defense is established sufficiently, based on all the papers and proof submitted, to warrant the court, as a matter of law, to direct judgment in favor of any party. (CPLR 3212 [b].) "The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence to demonstrate the absence of material issues of fact.” (Baldwin Plaza Assocs. v Plaza Dental Group, NYLJ, June 24, 1992, at 24, cols 5-6, quoting Canosa v Abadir, 165 AD2d 823 [2d Dept 1990].)
These issues are to be determined by examination of all the papers and proof submitted. CPLR 3212 (b) provides specifically what the papers and proof must contain: "A motion for summary judgment shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions. The affidavit shall be by a person having knowledge of the facts; it shall recite all the *709 material facts; and it shall show that there is no defense to the cause of action or that the cause of action or defense has no merit.”
In this case, notwithstanding their disagreement upon how this court should apply the law to the facts, the parties are in agreement as to the facts material and relevant to this summary proceeding. The parties agree on the following material and relevant facts:
1. David Deich signed the HOPE license agreement on July 10, 1991; and was assigned to one bedroom in a three-bedroom apartment described as a temporary shelter.
2. HOPE is a not-for-profit social service agency that provides for the homeless and others with special needs. It is essentially a provider of services for, and is funded by WCDSS.
3. David Deich is an otherwise homeless person placed in the HOPE program because he is HIV positive.
4. Paragraph 2 of the aforesaid agreement states, "HOPE agrees to allow the licensee to use for shelter, on a day to day temporary basis, Apartment No. 1 in the building located at 187 Ashburton Ave., Yonkers, N. Y.” and further, "it is agreed that the unit assigned may be changed from time to time and also used by HOPE to provide temporary shelter to other individuals and households.”
5. Paragraph 4 of the agreement provides that "the license may be revoked at any time by HOPE.”
6. David Deich signed "attachment A” to the agreement which further explained the limited nature of the "temporary emergency shelter”. Paragraph 3 states "I am not a tenant or roomer of the property operated by HOPE * * * I simply have transient access to the property * * * (4) I shall have a right of access only during such time as I am actively involved in the HOPE program * * * (5) I must comply with all policies, rules and regulations set forth by HOPE, [WCDSS], and the owner of the property”.
7. David Deich and his case manager signed a copy of the HOPE Emergency Housing Assistance Program Housing Rules which outline the rules for participation in the program including; no overnight guests, no pets, maintenance of the apartment in a clean orderly manner, and attendance at all meetings with case manager and all programs, as directed by the case manager.
8. David Deich violated the terms and conditions of the *710 agreement,* as established by petitioner’s exhibits B-F (consisting of a detailed record of the case manager’s observations and conversations), and Deich’s affidavit paragraphs 5-8 wherein Deich admits violation of the rules and intent to disregard rules in the future stating, "I would not comply with such a rule, because to do so would be very humiliating to me.”
9. On October 1, 1991 HOPE terminated Mr. Deich’s license to remain in the program but because of WCDSS’s obligation to provide alternate shelter HOPE was not able to transfer him to another facility until February of 1992.
10. On February 3, 1992 Deich’s license to occupy the above-mentioned premises was terminated and he was given 10 days from the service of the notice to vacate the premises.
11. David Deich continues to reside in the above premises pending the outcome of this summary proceeding. He has occupied Apt. 1, 187 Ashburton Ave. continuously for approximately 15 consecutive months.
The disagreement between the parties centers upon how the relevant facts should be applied to the pertinent case law and with what result. Respondent contends that despite the license agreement, he is not a mere licensee or person residing unlawfully; that petitioner’s operation of respondent’s residence as financed and supervised by WCDSS constitutes State action; and that respondent has a property interest in this particular bed at the HOPE shelter which cannot be terminated by either of the petitioner’s present petitions. Respondent further contends that because HOPE is a "State actor”, his residency can only be terminated for "good cause” pleaded and proven and following appropriate service of a notice to cure in accordance with RPAPL 741 (4).
Petitioner opposes respondent’s motion for summary judgment and alternative motion for a stay of the instant proceedings and cross-moves for summary judgment. Petitioner contends that respondent’s attempt to characterize his relationship with HOPE as a landlord/tenant relationship, despite the license agreement signed by the parties, based on an alleged State action entanglement between HOPE’S provision of housing and the WCDSS, is without merit. Petitioner argues that before the court addresses the issues of State action and due *711 process the respondent must demonstrate that a constitutionally protected property interest is at stake. He also contends that HOPE was formed not only to locate shelter for select, qualified homeless persons, but also to provide intensive case management services for those selected and thus, HOPE’S operation of this emergency housing program does not constitute State action. Petitioner acknowledges respondent’s constitutionally protected interest in emergency shelter assistance, but stresses that the relevant case law does not support an extension of this interest to a particular bed in a shelter. Petitioner emphasizes that HOPE is not attempting to terminate respondent’s entitlement to emergency shelter, rather they are trying to remove him from a particular shelter program following the termination of his license. Finally, petitioner argues the parties’ intent to enter into a license agreement is clearly evidenced in the written contract executed and further demonstrated by the structure and nature of this shelter program which seeks to provide shelter and treatment for a designated group of otherwise homeless individuals with "special needs” because they are HIV positive.
Initially, the court denies respondent’s request to stay this proceeding. "There is also a strong rule against staying a summary proceeding, or removing it, such as for purposes of a consolidation or joint trial with some proceeding in the supreme court * * * [a]ny other rule can encourage an imaginative respondent to commence such a collateral action just to delay the summary proceeding.” (Seigel, NY Prac § 577, at 909 [2d ed], citing Cohen v Goldfein, 100 AD2d 795 [1st Dept 1984].) A stay is not appropriate in this case where the issue of whether respondent has a possessory interest as opposed to a license in his bed at HOPE, is properly before this court. Additionally, the relevant issues have been addressed at great length by both parties in their motion papers, supporting memoranda, affidavits and extensive exhibits filed in connection with this motion and cross motion for summary judgment. For these reasons respondent’s request to stay this summary proceeding is denied.
Secondly, the court has reviewed the papers and proof submitted by both parties in this matter in support of their respective motions for summary judgment. The court concludes that the petition to evict respondent pursuant to RPAPL 713 (7) and 713 (10) as a licensee whose license had been terminated was sufficiently established to warrant the *712 court, as a matter of law, to direct judgment in favor of the petitioner.
This court does not reach the question of whether HOPE’S operation of this shelter program for otherwise homeless persons constitutes "State action” because respondent has failed to establish the threshold requirement of a constitutionally protected property interest in his assigned bed in this particular shelter. (See, Board of Regents v Roth, 408 US 564, 569 [1972].)
Despite eloquent arguments that respondent’s interest in this apartment constitutes a property right under the Fourteenth Amendment, as interpreted in Goldberg v Kelly (397 US 254 [1970]), this court is not persuaded that a homeless person has an entitlement to continued residence in the emergency shelter of his/her choice. (McCain v Koch, 117 AD2d 198, 218 [1st Dept 1986] ["Emergency shelter residents do not have a due process right to be housed in any particular neighborhood or type of housing”], citing Caton v Barry, 500 F Supp 45, 53 [D Dist of Columbia 1980]; see also, I.S.J. Mgt. v Delaney Clothing, 152 Misc 2d 13 [Civ Ct, NY County 1990] [a property interest in a benefit requires a legitimate claim of entitlement, not a unilateral expectation].)
The Supreme Court in Goldberg (supra) held that welfare benefits are a public welfare entitlement which constitute a property interest and thus, may not be terminated absent a due process hearing. (Goldberg v Kelly, supra, at 264.) The Goldberg due process requirements have not been violated in the case at bar where it is not David Deich’s right to emergency shelter that was terminated, but rather his license to participate in the HOPE emergency shelter program at a particular location.
Petitioner’s attempt to characterize this relationship as a tenancy by analogizing it to the situation presented to the Elmsford Village Court in Universal Motor Lodges v Seignious (146 Misc 2d 395 [1990]) is also not persuasive. In Motor Lodges, the motor lodge was merely a residence for otherwise homeless people who were placed there by WCDSS. In the case at bar, respondent participated in a shelter program, which combined temporary shelter with counseling, substance abuse treatment and programs to meet the special needs of HIV-positive individuals.
The nonpermanent nature of this shelter program is further demonstrated in respondent’s affidavit. In his affidavit, Deich *713 acknowledged that his participation in defendant’s housing program was temporary, and he expressed concern that the next shelter program may not be as nice, "until permanent housing accommodations are available, it is very important to me that I have the use of an apartment with a kitchen and the right to have friends visit and stay overnight.” (Emphasis added.) It was likewise obvious from respondent’s affidavit that he violated the shelter’s rules in the past and that if allowed to remain in the shelter he had no intention of abiding by the "no overnight visitor policy.”
It is precisely this desire to live in the best shelters which encourages a resident’s participation in the rehabilitation and treatment programs. It follows, that without the ability to summarily transfer a person out of a shelter when he/she fails to follow the rules and regulations set forth in the agreement, the shelter programs would have no way to enforce participation in the programs and to insure a safe, peaceful, and a healthy living environment conducive to the treatment and rehabilitation of each of the members of the shelter program. In a recent case Justice Henry of the Supreme Court, Nassau County, addressed this issue when discussing the summary termination of an individual from a similar shelter program, "Haven House, like other similar residences, has a set of house rules and an agreement that each resident reads and signs on admission, designed to prevent a resident, under penalty of transfer or discharge, from disrupting the other occupants and ruining the program for them. Even more important, it builds [in] the resident perhaps the sole incentive for self-help and self-improvement: you now have a nice place to live, for as long as you need it, if only you follow our rules and try to reshape your life for the better.” (Torres v Huntington Coalition for the Homeless, NYLJ, Aug. 27, 1992, at 25, cols 1-2.)
Therefore, absent a property right in this bed at the HOPE shelter, David Deich is limited to the terms of the license agreement he signed which provided that his license in this program could be summarily terminated at any time with or without cause.
In conclusion, summary judgment in favor of the petitioner is warranted in light of the above argument and authorities. The parties agree on the relevant facts, i.e., that David Deich signed a license agreement which contained certain rules and regulations, that he violated those rules, and that his license weis thereby terminated. No claim weis made that he misun *714 derstood those rules or was coerced into the agreement, only that his signature was a prerequisite to entering the program and that once enrolled he disliked the rules connected with communal living and the close supervision of his actions. Respondent’s own misconduct and his assertion of the elevated status of "tenant” should not jeopardize the care and treatment of other persons similarly situated. The court looks with compassion on the plight of the respondent but must also consider the crippling effect that Mr. Deich’s misconduct and claim of entitlement may have on HOPE’S ability to place other persons in this communal apartment within their shelter.
Accordingly, respondent’s motions for a stay and for summary judgment are denied and petitioner’s motion for summary judgment is hereby granted.

 Clearly, the parties disagree on the extent of the violations by Mr. Deich. However, the parties concur that respondent violated some of the rules.